# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PENNY DOWDY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:15-CV-1120-VEH |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Penny Renee Dowdy brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Dowdy timely pursued and

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

1

exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2] For the following reasons, the court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

## STATEMENT OF THE CASE

Dowdy was forty-four years old at the time of the Administrative Law Judge's Decision (Tr. 72). She has at least a high school education. (Tr. 185). Her past work experience includes employment as a server. (Tr. 64–65). She claims she became disabled on May 24, 2010 , due to anxiety, depression, skin cancer, a thyroid tumor, a deteriorated joint in her lower back, and varicose veins. (Tr. 184, 196). Her last period of work ended on May 24, 2010. (Tr. 22).

On March 31, 2011, Dowdy protectively filed a Title II application for a period of disability and DIB. (Tr. 196, 151–57, 158–64). She also protectively filed a Title XVI application for SSI on that date. *Id.* On May 25, 2011, the Commissioner initially denied these claims. *Id.* Dowdy timely filed a written request for a hearing on July 27, 2011. *Id.* The ALJ conducted a hearing on the matter on April 3, 2013. *Id.* On August 28, 2013, he issued his opinion concluding Dowdy was not disabled and denying her

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

benefits. (Tr. 31). She timely petitioned the Appeals Council to review the decision on October 22, 2013. (Tr. 15). The Appeals Council issued a denial of review on her claim. (Tr. 1).

Dowdy filed a Complaint with this court on July 2, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on November 2, 2015. (Doc. 7). Dowdy filed a supporting brief (doc. 11) on December 23, 2015, and the Commissioner responded with her own (doc. 13) on January 19, 2016.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since May 24, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar and thoracic degenerative disc disease, status post right and left ankle fracture, hypothyroidism, obesity, depression, generalized anxiety disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light

      work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can never work around unprotected heights. The claimant can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to understanding, remembering, and carrying out simple but not detailed or complex instructions. The claimant requires work that is low stress in nature, which is defined as occasional decision making and occasional workplace changes that are gradually introduced and well explained. The claimant can have no more than occasional interaction with the public, coworkers, and supervisors, and can have no tandem tasks required as part of the job duties.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on _____ 1969[4] and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to

---

[4] Full date of birth redacted pursuant to E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002) (codified in scattered sections of Title 44, United States Code).

        communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22–31).

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Dowdy urges this court to reverse the Commissioner's decision to deny her benefits on three grounds: the ALJ failed to obtain a current Psychiatric Review Technique Form ("PRTF") for the evaluation of mental disability; the ALJ erred in giving little weight to the opinion of Dowdy's treating physician, Dr. Lachman; and the RFC discussion fails to adequately explain the Commissioner's reasoning, in derogation of SSR 96-8P, 1996 WL 374184 (July 2, 1996). (Doc. 11 at 1–2). Because the court concludes that the ALJ inadequately explained his decision to discount Dr. Lachman's opinion, the court necessarily concludes that the ALJ's RFC analysis is infirm.

## I.   The ALJ Was Not Required To Obtain a PRTF

Dowdy's first assignment of error is to the ALJ's failure to procure and consider a completed and current PRTF. No such form was completed because Dowdy did not return the forms that were sent to her, so the "information in the file [was] insufficient to rate." (Tr. 344). The applicable regulation, 20 C.F.R. § 404.1520a "require[s] the ALJ to use [a] 'special technique,'" called the "Psychiatric Review Technique ("PRT")," to evaluate a claimant's mental impairment. *Moore v.*

*Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). The PRT requires that the ALJ (1) "determine whether [the claimant] has a medically determinable impairment, and then, (2) "rate the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(1)–(2). A claimant's functional limitation is rated in four broad areas: "[a]ctivities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation." *Id.* § 404.1527(c)(3).

At all stages of the disability evaluation process, the Commissioner is required to document her compliance with the PRT. *See generally id.* § 404.1527(e). At the State agency stage, the PRTF must be completed. *Id.* § 404.1527(e)(1). Once the proceedings reach an ALJ, his "written decision must incorporate the pertinent findings and conclusions based on the technique." *Id.* § 404.1527(e)(4). The ALJ may accomplish this by "complet[ing] a PRTF and append[ing] it to the end of his decision, or incorporat[ing the PRTF's] mode of analysis into his findings and conclusions." *Moore*, 405 F.3d at 1214. "Failure to do so requires remand." *Id.*

Dowdy relies on *Moore* for the proposition that the ALJ <u>must</u> complete a PRTF, but her position ignores the disjunction therein: an ALJ may fill out a form and attach it, <u>or</u> he may simply utilize the PRT's analytical framework. There is no requirement that the ALJ use a specific form. As the Commissioner points out, the ALJ clearly applied the PRT in his opinion, as required by *Moore* and 20 C.F.R. §

10

404.1527a(e)(4). (*See* tr. 23–24). In her reply, Dowdy (discombobulatingly) doubles-down on her position that a PRTF is required, even going so far as to quote from the regulation—which, like *Moore*, does not support her position at all. 20 C.F.R. § 404.1527a(e)(4), as quoted by Dowdy, provides that:

> **(4)** At the administrative law judge hearing and Appeals Council levels, **the written decision must incorporate the pertinent findings and conclusions based on the <u>technique</u>**. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision **must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section**.

(Bold text Dowdy's, underlined the court's).

Paragraph (e)(4) solely and unequivocally requires the application of the <u>**technique**</u>. *Expressio unius est exclusio alterius*; the form is not required when the technique is used. Further—and for what it's worth—to the extent Dowdy has even thought of contesting the State agency's failure to obtain a PRTF, the agency could not very well complete the form because Dowdy herself did not send them the necessary information. This challenge fails.

II. **<u>The ALJ Insufficiently Explained his Rejection of Dr. Lachman's Opinion</u>**

Dowdy next contests the ALJ's decision to discount the opinion of her treating

11

psychiatrist, Dr. Lachman. On March 18, 2013, Dr. Lachman opined that:

> Ms. Penny Renee Dowdy psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. Ms. Penny Renee Dowdy is unable to work an eight hour day or even a four hour day. She is unable to perform routine work. She is unable to work with colleagues appropriately and unable to take orders from supervisors. She is unable to follow even simple and certainly complex directions. She is unable to adapt to changes in the work routine or the work environment. She is unable to interact appropriately with the public.
> Ms. Penny Renee Dowdy is therefore unsafe and not able to function in the occupational setting. The patient's safety in the workplace cannot be guaranteed at this time. At this time, this patient is not able to enter the workforce in any capacity, including vocational rehabilitation. I do not see Ms. Penny Renee Dowdy['s] symptoms or illness diminishing in the near or even distant future. This inability to work will have a duration of at least 12 to 24 months, if not permanent.

(Tr. 647). On August 12, 2013, Dr. Lachman completed a worksheet in which she checked boxes to report Dowdy's abilities in making occupational adjustments. She checked "fair" ability to follow work rules, function independently, and maintain attention/concentration. (Tr. 787). She checked "poor to none" ability to relate to co-workers, deal with the public, use judgment, interact with supervisor(s), and deal with work stresses. (*Id.*).

The opinion of a treating physician "must be given substantial or considerable

weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when

- the treating physician's opinion was not bolstered by the evidence,

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no error. *Moore*, 405 F.3d at 1212.

The ALJ here has offered three reasons to discount Dr. Lachman's opinion ("DLO"): First, "Dr. Lachman's treatment notes clearly indicate the claimant has moderate limitations;" second, the ALJ considered Dowdy's appearance at the hearing to be inconsistent with mental disability; and third, "her broad activities of

13

daily living" undermined Dr. Lachman's opinion.[5] (Tr. 28–29). The foregoing is the extent of the ALJ's specificity vis-à-vis the discounting of the DLO, so remand would be warranted on the basis of the ALJ's taciturnity alone. But, in the interest of avoiding remand for harmless error, the court will consider the illustrative citations provided by the Commissioner.[6] *Cf. Shineski v. Sanders*, 556 U.S. 395, 407 (2009) (harmless error review exists "to prevent appellate courts from becoming impregnable citadels of technicality.").

In support of the ALJ's characterization of Dr. Lachman's treatment records as inconsistent with the DLO, the Commissioner marshals Dowdy's Global Assessment Functioning ("GAF") scores. They were 55 on May 14, 2013, 51 of March 6, 2013, and 52 on February 6, 2013. (Tr. 761, 650, 652). The ALJ noted these scores in his opinion and indicated that they reflected moderate symptoms. (Tr.

---

[5] The Commissioner mentions the old chestnut that "[o]pinions that you are disabled" are "opinions on issues that are reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Whether this was intended to be a separate argument is unclear (there is no link between this principle and Dr. Lachman's in the brief), but the ALJ did not discuss it in connection with Dr. Lachman's opinion, so the court will not consider it either. *Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutl. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action.").

[6] The Commissioner also argues that Dr. Lachman's opinion was inconsistent with some of the other medical opinions in the record. The ALJ did not discuss this purported inconsistency. The Eleventh Circuit has explained that merely pointing out a contradiction between a treating physician's opinion and her notes is insufficient to disregard the treating physician's opinion, so merely highlighting a disagreement between a treating physician's opinion and that of non-treating physicians is insufficient *a fortiori*. *See Perez v. Commisioner of Soc. Sec.*, 625 F. App'x 408, 417–18 (11th Cir. 2015).

27–28). But he did not explain what, if any, weight he assigned to the GAF scores, which the Eleventh Circuit requires that an ALJ do when he relies on the GAF score. *See McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006). Thus, even if it were possible for the Commissioner to cover for the ALJ's failure to explain his rejection of Dr. Lachman's opinion, see *Perez*, 625 F. App'x at 418, by attempting to rescue the ALJ using the GAF scores, the Commissioner cannot avoid the problem of the ALJ's silence.

Next is Dowdy's demeanor. It is well-settled that an ALJ may rely on appearance and demeanor to assess credibility, *Macia v. Bowen*, 529 F.2d 1009, 1011 (11th Cir. 1987), but "he cannot reject the claimant's testimony solely on that basis." *Cormier v. Commisioner of Social Sec.*, 522 F. App'x 468, 470 (11th Cir. 2013). Rather, he must "articulate explicit and adequate reasons for discrediting it." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Since the GAF scores were neither explicitly nor adequately relied upon, and the ALJ's gut cannot do the work by itself, the only remaining reed on which the ALJ's decision may be hung is Dowdy's daily activities.

To illustrate the ALJ's reference to Dowdy's daily activities, the Commissioner explains that Dowdy could drive a car, do light housecleaning, go shopping, attend church, and sometimes take her daughter to school. (Tr. 57–58; 60–62). But the

Eleventh Circuit does not believe that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)." "Housework, light cooking, and light grocery shopping are minimal daily activities" and "are not dispositive evidence of one's ability to perform sedentary work in a Social Security case." *Venette v. Apfel*, 14 F. Supp.2d 1307, 1314 (S.D. Fla. 1998).

And this court is required to consider the "entire record and take account of the evidence in the record which detracts from the evidence relied on by the" ALJ. *Foote*, 67 F.3d at 1561. Having done so, the court finds that Dowdy also explained that she has post-traumatic stress disorder as a result of her ex-husband's physical abuse, tr. 51, and she will often feel panicked when she is around a large number of people in her home. (Tr. 62). Additionally, she sometimes remains in bed for two or three days as a result of her depression. (Tr. 53). In light of this evidence, the court say cannot with any certainty that the ALJ considered the whole record, because he did not discuss it.[7]

The ALJ offered three conclusory and wholly insubstantial reasons for discounting the DLO. When augmented by the Commissioner's record citations, the

---

[7] The ALJ did mention this information at one point in his opinion, but he did not discuss it beyond reporting that Dowdy testified as she did. (Tr. 24, 25).

ALJ's justifications for denial of benefits are each insufficient by themselves to deny benefits as a matter of law. If the combination of these factors convinced the ALJ that benefits could lawfully be denied, it was his task to say why. This case must be remanded.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** this the 25th day of August, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge